**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Jill A. SMITH and Ernest W. Smith, Special Representative of the Estate of Michael W. Evanoff, Deceased, Defendants.**

**No. NA 91–182–C.**

United States District Court, S.D. Indiana, New Albany Division.

Dec. 15, 1992.

**142**

Joseph D. O'Connor, III, Bunger Robertson Kelley & Steger, Bloomington, IN, for State Farm Mut. Auto. Ins. Co.

Charles M. Gabhart, Jeffersonville, IN, for Jill A. Smith.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Brief in Support of Plaintiff's Motion for Summary Judgment filed July 1, 1992. Defendant's Response to Plaintiff's Motion for Summary Judgment was filed on August 21, 1992. Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment was then filed on September 8, 1992.

State Farm filed a Complaint for Declaratory Judgment on December 30, 1991, seeking interpretation of a policy of automobile insurance. The insured seeks compensation for injuries sustained while a passenger in the insured vehicle, and State Farm has denied coverage alleging that no liability or underinsured motor vehicle benefits are warranted under the policy. The parties filed a Stipulation of Facts on June 30, 1992.

### Statement of Facts

The defendant, Jill Smith and her father, Robert Smith, owned a 1986 Pontiac which was covered by a policy of insurance issued by State Farm. The Smiths were Indiana residents, and the vehicle was registered and principally garaged in the state of Indiana. State Farm is incorporated in, and has its principal place of business in Illinois, and is qualified to do business in Indiana and Kentucky. The policy was negotiated and issued in Indiana.

On or about March 1, 1991, Michael A. Evanoff, an Indiana resident, was operating the Smith vehicle when it collided with a truck in Louisville, Kentucky. Evanoff was killed and Jill Smith, a passenger in the insured vehicle, sustained serious bodily injury. The parties agree that Evanoff was primarily at fault and Evanoff's insurance carrier has paid Smith the limits of its liability coverage. State Farm has paid Smith the basic reparation benefits required under Kentucky's Motor Vehicle Reparations Act (KMVRA).

The State Farm policy contains a household exclusion which serves to deny liability coverage for any bodily injury to any insured or any member of an insured's family residing in the insured's household. Likewise, the policy contains a clause in the underinsurance coverage provision which excludes coverage to any land motor vehicle insured under the liability coverage of the policy or furnished for the regular use of the insured and her family. State Farm now seeks a determination that it does not owe additional liability or underinsurance benefits under the stated policy provisions.

### I. *Standard of Review*

This Court may enter summary judgment in favor of the plaintiff in this case only if the evidence of record shows that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has often discussed the propriety of the grant of a summary judgment motion. In *Matsushita Electric Industrial Co., Ltd. v. Zenith Ra-*

*dio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' .'. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (emphasis in original) (citations omitted).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

The Seventh Circuit has further elaborated upon the standard of review applicable in summary judgment motions. In *Spellman v. C.I.R.*, 845 F.2d 148, 151 (1988), the Court stated "[i]f, when discovery is completed, the party with the burden of proof has failed to obtain enough evidence to defeat (if it were a trial) a motion for directed verdict, his opponent is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986)." The Court went on to state that "[w]hen it is plain that a trial could have but one outcome, summary judgment is properly granted to spare the parties and the court the time, the bother, the expense, the tedium, the pain, and the uncertainties of trial." *Id.* 845 F.2d at 152.

In this case, there are no material issues of fact in dispute. The parties have filed a Stipulation of Facts and now ask the Court to interpret the policy of insurance and apply the appropriate state law to resolve this controversy. Therefore, the Court shall proceed to review the applicable law.

## II. *Applicable Law*

State Farm contends that choice-of-law rules mandate application of Indiana law to the facts at issue here. Because federal courts invoke the choice-of-law rules of the forum in which they sit, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), Indiana's choice-of-law rules would apply. As a general rule, Indiana choice-of-law questions in a contract action are usually decided by the "most intimate contacts" analysis. *Dohm & Nelke v. Wilson Foods Corp.*, 531 N.E.2d 512, 513 (Ind.App. 1988); *Suyemasa v. Myers*, 420 N.E.2d 1334 (1981).

The defendants appear to theoretically concede that Indiana is the state with the most intimate contact, that being the place of contracting and negotiation, the place of performance of the contract, the location of the subject matter of the contract, and the residence of all the parties. Defendants, however, insist that any choice-of-law discussion is inappropriate here because of a specific policy provision which provides as follows:

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

1. Out-of-State Coverage.

    If an *insured* under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

    a. the policy will be interpreted to give the coverage required by the law; and

    b. the coverage so given replaces any coverage in this policy to the extent required by the law for the *insured's* operation, maintenance or use of a *car* insured under this policy.

This provision, defendants assert, provides that the insured shall have the coverage called for under Kentucky law.

State Farm recognizes that the above provision requires it to provide such minimum coverage as directed by the Kentucky Motor Vehicles Reparation Act [hereinafter "KMVRA"], K.R.S. § 304.39–010 et seq., but argues that it is bound to replace only those policy provisions inconsistent

with KMVRA to provide such minimum coverage. State Farm insists that the above provision does not otherwise authorize modification of the policy in accordance with Kentucky law or justify application of Kentucky law.

The question is whether the Court must apply Indiana choice-of-law rules or simply apply Kentucky law under the authority of the above quoted language. Defendants contend that the referenced language in the policy makes it unnecessary for this Court to apply choice-of-law rules to decide which state's laws should be used in interpreting the Smith policy. However, rather than authorizing wholesale implementation of Kentucky law, the Court finds that the stated policy provision merely requires the insurer to provide the minimum coverage mandated by the KMVRA. Kentucky law obviously applies to the extent necessary to interpret the provisions of the KMVRA but does not otherwise govern interpretation of the policy.

The policy does not say that out-of-state coverage is governed, or the policy interpreted, by the law of the state in which the collision occurs. Certainly, if the insurer had wanted to provide that the law of the forum be supplanted with another state's law, it could have easily so provided. Rather, the policy provides that if the insured becomes subject to another state's compulsory insurance laws, then the policy will be read to give such coverage as is required by law. The Court finds such language to provide for only such minimum mandatory coverage as required by the Act.

Defendants' position that the rights of the parties and the claims of the insured are to be determined pursuant to Kentucky law is hereby rejected. The Court finds that Indiana is the state with the most intimate contact and thus under relevant choice-of-law principles, Indiana law controls the determination of whether liability and underinsured motorist coverage exists.

### A. Liability Coverage
#### 1. *Coverage Under The Act:*

Defendants cite *Crenshaw v. Weinberg,* 805 S.W.2d 129, 131 (Ky.1991) that "[t]he MVRA applies alike to everyone who uses a motor vehicle on the public roads in Kentucky. The Act provides, in no uncertain terms, that 'any person' who 'uses a motor vehicle on the public roadways of this Commonwealth' is, 'as a condition of such ... use,' 'deemed to have accepted the provisions of this subtitle [the MVRA].' KRS 304.39–069(1). This can only mean 'any person' and all 'provisions.'" (citing *Troxell v. Trammell,* 730 S.W.2d 525, 527 (Ky. 1987)).

■ It is clear from the statutory language that Smith is entitled to basic reparation benefits. K.R.S. § 304.39–030 states, in pertinent part, that "[i]f the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits, ..." State Farm has paid basic reparation benefits in the amount of $10,000.00 and asserts that no further benefits are due.

The law governing required minimum tort liability insurance is set forth in K.R.S. § 304.39–110, which provides that the "requirement of security for payment of tort liabilities is fulfilled by providing ... [s]plit limits liability coverage of not less than twenty-five thousand dollars ($25,000) for all damages arising out of bodily injury sustained by any one (1) person, and not less than fifty thousand dollars ($50,000) for all damages arising out of bodily injury sustained by all persons injured as a result of any one (1) accident, ..." The $25,000.00 required minimum liability insurance has already been paid to Smith by Evanoff's insurer.

The technical language of the statute is satisfied by Evanoff's payment of liability benefits to Smith. The Court is not persuaded by the authority of *Bishop v. Allstate Insurance Co.,* 623 S.W.2d 865 (Ky. 1981). In *Bishop,* the court noted that the stated purpose of the KMVRA is to assure that a driver be insured to a minimum level, and because the household exclusion effectively renders a driver uninsured to the extent of the reduction or elimination, such an exclusion provision was held to

contravene the purpose and policy of the Act. The household exclusion in the Smith policy does not serve to render the *driver* uninsured, because Evanoff was insured and did provide liability coverage. Therefore, for all the foregoing reasons, the Court finds that no additional liability benefits are due under the Act.

### 2. Coverage Under The Policy:

The Smith policy is not ambiguous, and does clearly exclude liability coverage under the present facts. Under the terms of the Smith policy, Exclusion 2C of the Liability Section, liability coverage is excluded for a claim of any insured or member of the insured's family residing in the insured's household. Because an insurer may limit liability in any manner not inconsistent with public policy or in violation of statutory requirements, *Gardner v. State Farm Mut. Ins. Co.*, 589 N.E.2d 278, 282 (Ind.App.1992), the Court shall analyze whether such an exclusion violates Indiana's public policy.

■ The Indiana Courts have had an opportunity to address the issue of whether household exclusions offend public policy or otherwise violate statutory mandates and have held that such household exclusions are not contrary to public policy or Indiana's statutory scheme. *Transamerica Ins. Co. v. Henry By Next Friend Henry*, 563 N.E.2d 1265 (Ind.1990); *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096 (Ind.1985).

The *Transamerica* Court specifically found that household exclusions did not offend the spirit of Indiana's financial responsibility laws:

> Indiana's motor vehicle scheme ... is designed only to protect motorists from drivers *other* than themselves. It is not designed to protect owners (and their families and friends) from themselves. Therefore, Ind.Code § 9–1–4–3.5 [now § 9–18–2–11] does not constitute a social policy to guarantee compensation to all victims of motor vehicle accidents.

*Id.* at 1268 (emphasis in original). Additionally, the Court concluded that the

household exclusion does not violate Indiana's public policy.

The Smith policy clearly and explicitly denies liability coverage for any insured residing in the insured's household, and it has been held that such an exclusion is not contrary to public policy. The Court, therefore, having considered the statutory language, the pertinent policy provisions, and applicable law, does hereby find that no additional liability coverage is warranted under the Smith policy.

### B. Underinsured Motorist Coverage
### 1. Coverage Under The Act:

■ The Court rejects the defendant's argument that underinsured motorist coverage is mandatory under the Kentucky Act. KRS § 304.39–010(1) sets out the policy and purpose behind the Act and specifically provides that the Act is designed to effectuate improvements in reparations by requiring "owners, registrants and operators of motor vehicles in the Commonwealth *to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles ...*" (emphasis added). There is no reference to underinsurance coverage and no other language in the statute which would make such coverage mandatory.

Indeed, in the *Bishop* case relied upon by defendants, *supra* at 865–866, the court recognized that the "act mandates two types of coverage. It requires that motor vehicle owners and operators provide minimum security covering payment of no-fault BRB and payment of tort liability for personal injuries and property damages." (citing *Fann v. McGuffey*, 534 S.W.2d 770, 772 (Ky.1975)). Likewise, in *Flowers v. Wells*, 602 S.W.2d 179, 180 (Ky.1980), the court held that "the statute clearly sets out underinsured motorist coverage is optional and not mandatory."

Underinsured Motorist Coverage is discussed in KRS § 304.39–320 which states as follows:

> (1) As used in this section, "underinsured motorist" means a party with motor vehicle liability insurance coverage in an amount less then [sic] a judgment

recovered against that party for damages on account of injury due to a motor vehicle accident.

(2) Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the *other* vehicle exceeds the liability policy limits thereon, the extent of the under insurance policy limits on the vehicle of the party recovering ... (emphasis added)

The legislature thus implicitly recognized coverage exclusions such as that contained in the Smith policy by virtue of the above reference to the driver of the *other* vehicle. The Court, hereby finding that underinsurance coverage is not required under the Act, shall therefore proceed to determine whether such coverage is provided under the terms of the policy.

### 2. Coverage Under The Policy:

The Smith policy contains an underinsurance coverage exclusion which states that:

An *underinsured motor vehicle* does not include a land motor vehicle:

1. insured under the liability coverage of this policy;
2. furnished for the regular use of *you, your spouse* or any *relative;*

State Farm has denied underinsurance coverage based upon the above provision.

The parties are unable to discover any Indiana precedent which affirms or refutes the validity of the above underinsurance coverage exclusion. However, the Court finds that the rationale espoused by Indiana Courts in the context of uninsured motorists coverage is persuasive authority in the underinsurance analysis.

In the recent case of *Whitledge v. Jordan,* 586 N.E.2d 884 (Ind.App.1992), the court upheld an exclusion which denied uninsured coverage on any automobile owned by or furnished for the regular use of the insured or any family member. The court determined that such an exclusion was not contrary to the intent of the law as set forth in Ind.Code § 27–7–5–4 and was not a violation of Indiana public policy.

The pertinent underinsurance provision in the Indiana Code, set forth in Ind.Code § 27–7–5–4(b), provides that the definition of underinsured motor vehicle is "subject to the terms and conditions of such coverage." If the definition of underinsured motor vehicle is subject to the terms of the Smith policy, then there is no coverage because State Farm excludes those vehicles insured under the liability provisions of the policy and those furnished for the regular use of the insured or members of the insured's family.

Because Indiana Courts have upheld similar exclusions in regard to uninsured coverage, the Court adopts such consistent reasoning to hold that the instant exclusion from underinsurance coverage is not a violation of Indiana public policy or contrary to legislative intent. Therefore, the Court finds that the exclusion from underinsurance coverage is valid, and Smith is not entitled to underinsurance benefits under the clear language of the policy.

Therefore, and in accordance with the foregoing, Plaintiff's Motion for Summary Judgment is hereby GRANTED.

This is the final judgment of the Court.