RENDERED:  AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000846-MR

JEFFREY G. STAGNARO,
ADMINISTRATOR OF THE
ESTATE OF DAVID BOUMA                                             APPELLANT


|   | APPEAL FROM CAMPBELL CIRCUIT COURT |
|---|---|
| v. | HONORABLE DANIEL J. ZALLA, JUDGE |
|   | ACTION NOS. 17-CI-00308 AND 17-CI-00422 |


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  The estate of insured, an Ohio resident who was killed in

a car accident in Kentucky, filed a claim for underinsured motorist ("UIM")

benefits.  The Campbell Circuit Court denied coverage, finding Ohio law did not

entitle insured to UIM coverage.  After careful review, finding no error, we affirm.

On March 15, 2016, decedent David Bouma ("Bouma") was driving on the I-275 bridge crossing the Ohio River from Campbell County into Ohio when he was killed in an accident involving an R&L Carriers ("R&L") tow truck and Brittany Asch ("Asch"). R&L had a $4,000,000 liability insurance policy limit, and Asch had a liability policy with a $100,000 limit. Bouma's estate filed suit against the above-named at-fault parties, and after extensive litigation, they entered into a confidential settlement agreement.

After Bouma's estate settled with the tortfeasors, the only remaining issue before the circuit court was whether the estate was entitled to UIM benefits under Bouma's State Farm Mutual Automobile Insurance Company's ("State Farm") policy. State Farm and Bouma's estate filed cross-motions for summary judgment. The issues were whether Ohio or Kentucky law applied under the facts of the case and then whether the estate was entitled to UIM benefits of up to $250,000. State Farm argued Ohio law applied under the most significant relationship test, and the estate was not entitled to any UIM benefits. Under Ohio law, State Farm argued, the estate was not entitled to receive payment because the total amount of recovery from both parties exceeded Bouma's $250,000 UIM coverage. Bouma's estate argued Kentucky law applied and entitled him to the full amount of his $250,000 UIM coverage. Alternatively, Bouma's estate argued, under Ohio law, it was entitled to recover $150,000 in UIM benefits because the

at-fault parties were severally liable, and it only recovered $100,000 from Asch's liability policy.

The circuit court held Ohio law applied under the most significant relationship test. The court further found, under Ohio Law, the estate was not entitled to receive UIM benefits. This appeal followed.

On appeal, Bouma's estate argues the circuit court erred in determining: (1) Ohio law applied and (2) the estate was not entitled to $150,000 in UIM coverage for Asch's tortious conduct. "The questions presented are all purely legal ones concerning the scope of coverage provided by an insurance contract. Our standard of review, therefore, is *de novo*." *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013) (citing *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872 (Ky. 2006)).

First, Bouma's estate argues Kentucky law applies under the most significant relationship test. In resolving "choice of law issues that arise in contract disputes[,]" we apply the following four factors to determine which state has the most significant relationship to the transaction and the parties: "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties." *Id*. at 878-79 (citing RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(2) (1971)).

-3-

Here, Bouma was an Ohio resident who entered into the State Farm insurance contract at issue in Ohio. The State Farm policy specifically provides Ohio law would apply to any claims brought under the policy. Bouma's vehicle was garaged and licensed in Ohio. Although Bouma drove to Kentucky for work at times, the accident occurred in Kentucky, and Bouma's estate was opened in Kentucky, these factors are far outweighed by the significant relationship Ohio has with the parties and the insurance transaction. As such, the circuit court correctly applied the most significant relationship test and found that Ohio law applied.

The estate further argues that even if Ohio has the most significant relationship to the transaction, Kentucky law still applies because Ohio's law violates Kentucky's public policy. Our Supreme Court addressed this issue in the context of Pennsylvania law in *Hodgkiss-Warrick* and held that application of Pennsylvania law did not violate Kentucky's public policy based on the following reasoning:

> In *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954), our predecessor Court, emphasizing that "contracts voluntarily made between competent persons are not to be set aside lightly," and that "the right of private contract is no small part of the liberty of the citizen," observed that public policy would not bar enforcement of a contract unless "it clearly appears that [the] contract has as its direct object and purpose a violation of the Federal or state constitution, Federal or state statutes, some ordinance of a city or town, or some rule of the common law." More recently, in *Kentucky Farm Bureau Mut. Ins. Co. v. Thompson*, 1 S.W.3d 475, 476-77 (Ky. 1999), we

> reiterated that public policy, invoked to bar the enforcement of a contract, is not simply something courts establish from general considerations of supposed public interest, but rather something that must be found clearly expressed in the applicable law.

*Hodgkiss-Warrick*, 413 S.W.3d at 880-81. In determining whether the law of the state with the most significant relationship to the transaction violates Kentucky's public policy, the key question is "whether the public policy was so strong as to require a Kentucky court to interject Kentucky law into a dispute having none but a fortuitous connection with Kentucky." *Id.* at 882.

Here, Bouma agreed Ohio law would apply to any claims arising from the policy when he entered into the insurance agreement with State Farm. The only connections this transaction has with Kentucky are that the accident occurred on the Kentucky side of a bridge crossing the river into Ohio and the estate was opened in Kentucky. As in *Hodgkiss-Warrick*, Ohio and Kentucky merely have competing public policies regarding UIM coverage, and no Kentucky resident is affected. *Id.* at 882-83. There is no reason to interfere with the contract between the parties or the balance of insurance coverage and insurance affordability Ohio has chosen for its residents. *Id.* Thus, the circuit court correctly found Kentucky public policy does not require application of Kentucky law in this instance.

Second, the estate argues, if Ohio law applies, it was entitled to receive $150,000 in UIM coverage from State Farm because Asch's policy limit of

$100,000 did not exceed Bouma's UIM coverage of $250,000. R.C.[1] 3937.18(C)

establishes the conditions which must be present to receive payment of UIM

coverage:

> If underinsured motorist coverage is included in a policy of insurance, the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage. Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
>
> For purposes of underinsured motorist coverage, an "underinsured motorist" does not include the owner or operator of a motor vehicle that has applicable liability coverage in the policy under which the underinsured motorist coverage is provided.

In *Clark v. Scarpelli*, 744 N.E.2d 719 (Ohio 2001), the Supreme Court

of Ohio addressed "the meaning of the 'amounts available for payment' language

set forth in the statute." *Id.* at 272. The Court noted "that the statute was intended

---

[1] Ohio Revised Code.

to ensure that a person injured by an underinsured motorist should never be afforded greater protection than that which would have been available had the tortfeasor been uninsured." *Id.* at 276. The Court held "that for the purpose of setoff, the 'amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)." *Id.* at 279-80; *Littrell v. Wigglesworth*, 746 N.E.2d 1077, 1084 (Ohio 2001).

Furthermore, in cases involving multiple tortfeasors, the Ohio Court of Appeals has held "the plain language of the statute requires that all liability bonds and insurance policies for all 'persons liable' to the insured be considered *in toto.*" *Vawter v. Select Transp., Inc.*, No. 99AP-191, 1999 WL 1080114, at *5 (Ohio Ct. App. Dec. 2, 1999); *see also Masenheimer v. Disselkamp*, No. CA2002-08-200, 2003 WL 435785 (Ohio Ct. App. Feb. 24, 2003); *Gray v. State Farm Mut. Auto. Ins. Co.*, No. CA2001-07-174, 2002 WL 336943 (Ohio Ct. App. Mar. 4, 2002); *Roberts v. Allstate Ins. Co.*, No. CA2001-06-133, 2001 WL 1598274 (Ohio Ct. App. Dec. 17, 2001). Although these cases addressing multiple tortfeasors are unpublished, the factual circumstances in each case are more comparable to the facts at hand than any published case law, and their holdings are consistent with the holding in *Clark*. As such, they are instructive in rendering our decision.

Based on our review of the statute and relevant case law, we hold the limitation in R.C. 3937.18(C) applies to both tortfeasors jointly. The combined limits of coverage available for payment to Bouma from "all persons liable" is $4,100,000, which far exceeds the $250,000 limits of his UIM coverage. Therefore, the circuit court correctly found the estate was not entitled to any UIM benefits.

For the foregoing reasons, we affirm the judgment of the Campbell Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Tad Thomas
Lindsy Lopez
Louisville, Kentucky

BRIEF FOR APPELLEE:

Susanne M. Cetrulo
Edgewood, Kentucky