### David L. BACHMAN,

v.

### Stephanie K. LOCKE, et al.,

### Civil Action No. 95–141.

United States District Court,
E.D. Kentucky,
Lexington Division.

Sept. 10, 1996.

Douglas C. Brandon, Lexington, KY, for Plaintiff.

Michael Eugene Liska, Fowler, Measle & Bell, L.L.P., Lexington, KY, George B. Hocker, Gregg E. Thornton, Guy Edward Hughes, Clark, Ward & Cave, Lexington, KY, Robert L. Steinmetz, Christopher S. Burnside, Griffin Terry, Brown, Todd & Heyburn, P.L.L.C., Louisville, KY, for Defendants.

### OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court on the motion of defendant Mirac, Inc., d/b/a Enterprise Rent–A–Car ("Mirac"), pursuant to Fed.R.Civ.P. 60, for relief from the Court's opinion and order dated July 3, 1996 and for reconsideration of Mirac's motion for summary judgment. The plaintiff having responded, and Mirac having filed its reply, this matter is now ripe for review.

### I. BACKGROUND

. Defendant Mirac's connection with this action stems from the rental of a vehicle to Howard Ruegsegger[1] in Michigan. It is undisputed that under the terms of the rental agreement only Ruegsegger and an individual named Tom Thurlow were authorized to drive the vehicle. It is also undisputed that the rental agreement granted permission for the vehicle to leave the state of Michigan and travel to Florida. Although none of the par-

---

1. Ruegsegger was formerly a defendant in this case but was dismissed for lack of personal juris- diction due to a lack of minimum contacts with Kentucky.

ties provided the Court with a legible copy of the rental agreement, it appears undisputed that the rental agreement contained a provision entitled "Bodily Injury/Property Damage Responsibility to Third–Parties" which provided that "[i]f renter or other authorized driver is in compliance with all provisions of this Agreement, and is between 25 and 70 years old, owner's financial responsibility extends to renter and other drivers named on this Agreement and approved by owner for third-party claims arising from the use of this car as required by motor vehicle minimum financial responsibility laws of the state where the car is operated unless the Agreement requires the renter to provide such coverage. Renter is responsible for damage or loss to property transported by or in the car." The rental contract also contained a provision stating that "[a] violation of the contract shall exist if the car is used or driven ... (b) by any person under the age of 21 without owner's written permission ... (E) by any person other than the renter without the written consent of the owner."

This lawsuit arises from a car accident that occurred on April 8, 1993 between plaintiff David Bachman and the rental vehicle owned by defendant Mirac. Apparently, the renter Ruegsegger had allowed his daughter to take the vehicle on vacation to Florida. Defendant Locke, a friend of Ruegsegger's daughter, was driving the vehicle at the time of the collision. Although no party has provided any information concerning Locke's age at the time of the collision, it appears undisputed that she was under the age of 21 at the time. Furthermore, it is undisputed that she was not named in the rental agreement as an authorized driver of the vehicle.

Mirac previously moved for summary judgment arguing that because Locke was not authorized to drive the vehicle, Mirac had no obligation to provide coverage under the rental agreement. Defendant Locke responded that although she did not have permission to drive the vehicle under the rental agreement, she did have the permission of the renter. Thus, Locke argued that under Kentucky law she had a good faith basis from which she could believe that she was authorized to drive. In addition, because the rental agreement provided that the vehicle could travel to Florida, Locke argued it was fore-seeable that the vehicle would travel through Kentucky. Plaintiff Bachman responded that because he was not a party to the contract between Mirac and Ruegsegger, that contract should not effect his ability to proceed with his lawsuit. Furthermore, plaintiff argued that Mirac's liability turns on factual questions of Mirac's relationship to the renter and driver, and whether such relationship is one of master/servant or principal/agent. According to plaintiff, under the doctrine of respondeat superior the owner of a vehicle is liable for the acts of its servant or agent, and also for the acts of a second permittee.

When no reply was received, the Court considered the various arguments of the parties, and denied the motion for summary judgment, finding that the agreement between Mirac and Ruegsegger does not provide a basis for summary judgment in this case.

## II. MOTION FOR RELIEF FROM ORDER

Mirac's motion for relief from the Court's order is premised on the fact that the Court's decision was rendered without the benefit of Mirac's reply memorandum. Mirac claims when it received the Court's opinion and order entered July 3, 1996 it learned that its reply, apparently due to some clerical error, had not been filed and made part of the record. Attached to Mirac's motion is the affidavit of Melissa J. Trent, secretary for Mirac's attorney, who states that she prepared the replies for mailing and placed them in the basket for outgoing mail. Mirac asks that the Court revisit its decision denying Mirac's motion for summary judgment with the aid of the absent replies.

In reply to defendant Locke's response, Mirac argues that Locke does not benefit from Kentucky's statute requiring the owner of a vehicle to provide coverage because Locke did not have the owner's permission to operate the vehicle. While Mirac states that it would have provided coverage for Ruegsegger or the other named driver, Locke's operation of the vehicle was clearly in violation of the rental agreement, which is therefore unenforceable. Mirac draws support for its position from *Preferred Risk Mutual In-*

*surance Co. v. Kentucky Farm Bureau Insurance Co.,* 872 S.W.2d 469 (Ky.1994), in which the Supreme Court of Kentucky, after quoting KRS 304.39–080(5), stated:

> It appears clear from this language that there is no duty on a vehicle owner to provide minimum tort liability insurance or security for use by an operator who does not have the owner's permission or who converts the vehicle to his own use. Such a policy was the law in this Commonwealth before the MVRA (effective July 1, 1975) and continues to be after its passage.

*Id.* at 470–71 (citations omitted). Although Locke argues that she had permission to operate the vehicle, Mirac stresses that the permission she had came from the renter, not the owner of the vehicle. Mirac argues that under the terms of the rental agreement, Ruegsegger did not have the authority to grant Locke permission to drive the vehicle. Finally, Mirac notes that the purpose of the MVRA is to assure that a driver will be insured to a minimum level. In this case, Locke is insured by her own carrier, and possibly could have pursued a claim against Ruegsegger's carrier.

In reply to plaintiff's response, Mirac argues that rather than presenting a situation where Mirac is trying to enforce its contract with Ruegsegger against plaintiff, plaintiff is instead trying to enforce the contract against Mirac. The contract in question concerned the rental of the vehicle involved in the accident, and provided for liability insurance against third parties. As with any contract of insurance, this coverage contained exclusions and only covered certain individuals. Had Ruegsegger been involved in the accident, the contract would have been applicable. However, since the accident involved a non-authorized driver, Mirac contends that it cannot be held liable. In response to plaintiff's argument that Locke was a second permittee, Mirac argues that the contract clearly set out who was permitted to drive the vehicle. Thus, Ruegsegger could not allow his daughter to drive the vehicle, nor could Ruegsegger's daughter allow Locke to drive. Therefore, Locke does not qualify as a second permittee. Mirac also contends that *Wolford v. Scott Nickels Bus Co.,* 257 S.W.2d 594 (Ky.1953), cited by the plaintiff, supports Mirac's motion for summary judgment. In that case, the Court stated:

> Liability for damages arising from the operation of a motor vehicle must rest on something more than mere ownership. When a vehicle is operated by a person other than the owner, the relationship of master and servant or principle and agent is necessary to establish liability on the owner.

*Id.* at 595. In this case, Mirac contends that the plaintiff cannot possibly prove such a relationship between the owner, Mirac, and operator, Locke, because such a relationship is specifically forbidden by the rental contract, which clearly establishes that Locke was not authorized to drive the vehicle. Here, Mirac's only relationship to this accident is ownership of the vehicle involved, which alone is not sufficient to support liability.

In response to Mirac's motion for relief, the plaintiff argues that Mirac must show exceptional and compelling circumstances that would entitle it to relief under Fed. R.Civ.P. 60. Because plaintiff contends that Mirac has failed to do so, plaintiff requests that the motion for relief be denied.

## III. ANALYSIS

Fed.R.Civ.P. 60(b) provides, in part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. . . .

Having considered Mirac's motion under Rule 60, the Court finds it is appropriate to revisit Mirac's motion for summary judgment with the benefit of Mirac's replies.

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Instead, he must set forth specific facts showing that there is a genuine issue for trial. *Potters Med. Center v. City Hosp. Ass'n*, 800 F.2d 568 (6th Cir.1986). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

KRS 304.39–080(5), part of Kentucky's Motor Vehicle Reparations Act, provides in part:

> every owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth, and any other person may provide with respect to any motor vehicle, by a contract of insurance or by qualifying as a self insurer, security for the payment of basic reparation benefits in accordance with this subtitle and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

While Mirac gave permission for its vehicle to travel to Florida, and thus could foresee that the vehicle would be used in Kentucky, it also clearly set out who was authorized to drive the vehicle, specifically the renter Ruegsegger and Tom Thurlow. It is undisputed that the rental agreement did not authorize defendant Locke to drive the vehicle. Furthermore, it is undisputed that the rental agreement also provided that operation by any person under the age of 21, or any person other than the renter without the written consent of the owner, was a violation of the contract.

█ In *Preferred Risk, supra,* the owner of the vehicle involved in the incident was Linda Sharon. During an argument with her soon to be ex-boyfriend, the boyfriend took the key to Sharon's pickup truck and intentionally struck another car. Both the owner of the other car and his passenger were injured in the collision, and Preferred Risk, the car owner's insurer, paid basic reparation benefits. In the ensuing lawsuit, Preferred Risk included a claim for declaratory relief, requesting the court to declare whether Sharon's policy with Farm Bureau afforded liability coverage for the collision caused by the estranged boyfriend's operation of Sharon's vehicle. The Supreme Court of Kentucky affirmed the decision of the Court of Appeals finding that there was no mandatory coverage under the circumstances. As stated by Mirac, after quoting KRS 304.39–080(5), placing particular emphasis on the clause "by him or with his permission," the court found, as set out above, that:

> It appears clear from this language that there is no duty on a vehicle owner to provide minimum tort liability insurance or security for use by an operator who does not have the owner's permission or who converts the vehicle to his own use. Such a policy was the law in this Commonwealth

before the MVRA (effective July 1, 1975) and continues to be after its passage.. *Preferred Risk,* 872 S.W.2d at 470–71.

Locke has argued, citing *Mosley v. West American Ins. Co.,* Ky.App., 743 S.W.2d 854 (1987) in support, that Kentucky courts have held that an insurer is limited in the circumstances in which coverage may be excluded. As pointed out by Mirac, the circumstances of that case are far different from those presented here. In *Mosley,* the circuit court held that Mosley, West's insured, was not covered by tort liability insurance because he admitted that he intentionally caused his vehicle to strike another vehicle. In discussing the issue, the Court of Appeals recognized that the MVRA does not specify exclusions from minimum coverage. Thus, relying on the decision in *Bishop v. Allstate Insurance Co.,* Ky., 623 S.W.2d 865 (1981), the Court of Appeals determined that there may be no exclusions for basic reparations benefits or minimum tort liability. However, in this case, Mirac is not seeking to limit or exclude minimum coverage for its insured. Instead, Mirac is arguing that because Locke was an unauthorized driver, she is not covered by Mirac. As the Kentucky Supreme Court made clear in *Preferred Risk,* a vehicle owner does not have to provide minimum tort liability insurance for use by an operator who does not have the owner's permission to drive.

The plaintiff has argued, relying on *Wolford v. Scott Nickels Bus Co.,* Ky., 257 S.W.2d 594 (1953), and *Seaboard Fire & Marine Insurance Co. v. Demarsh,* Ky., 515 S.W.2d 242 (1974), that under the doctrine of respondeat superior, the owner of a vehicle is liable for the acts of its servant or agent, and also for the acts of a second permittee. In *Wolford,* a truck owned by Robert Wolford was taken without his permission by his brother, Omer Wolford, who subsequently was involved in an accident. As stated above, the court determined that "liability ... must rest on something more than mere ownership. Where the vehicle is operated by a person other than the owner, the relationship of master and servant or principal and agent is necessary to establish liability on the owner.... In each case, the relationship must exist at the time and in respect to the thing causing the injury and at a time while

the agent or servant is acting within the scope of his agency or employment." *Wolford,* 257 S.W.2d at 595. While the court recognized that when the facts are in dispute or contradictory, the question of agency is for the jury, because it was undisputed that the truck was being operated without the knowledge or consent of the owner, the court found in *Wolford* that no relationship of master and servant or principal and agent existed between the owner and the driver.

In *Seaboard,* the owner of the vehicle regularly allowed his son to use his car, and on the occasion in question, the son had been using his father's car. However, when he found himself without a ride back to Fort Knox, in order to avoid being absent without leave, the son made arrangements for a friend to transport him to Fort Knox in his father's car. The friend agreed, but on the return trip to Louisville was involved in an accident, killing Rita DeMarsh, a passenger in the vehicle. In the ensuing wrongful death litigation, although Seaboard agreed to pay the DeMarsh estate provided there was coverage, Seaboard argued that coverage did not exist because the driver was operating the car without the owner's permission and consent. The Kentucky Court of Appeals, noting that the father freely gave permission to his son to use his car for any necessary purpose, including pleasure, affirmed the circuit court's judgment that the driver was a second permittee operating the vehicle with the implied permission of the owner, thereby bringing the operation of the vehicle within the terms of Seaboard's policy. The court noted,

> It is generally held that a second permittee driving the automobile for the benefit or advantage of the first permittee is afforded the protection of the Omnibus Clause under the theory that the automobile is being operated within the implied permission of the named insured.

Id. at 243.

In this case, while Locke may have had the permission of Ruegsegger and/or Ruegsegger's daughter to drive the vehicle, it is undisputed that she did not have the permission of the owner Mirac. It is also clear that Mirac, in renting the vehicle to

Ruegsegger, set forth in express terms exactly who was authorized to drive the vehicle. Thus, this is not a situation where the owner of the car freely gave permission for the renter to use the car for any purpose. Furthermore, given that the rental agreement provided that persons other than the renter could only drive the vehicle with the written consent of the owner, it is inconceivable that Locke was somehow operating the vehicle with the implied consent of the owner. While Locke may have been operating the vehicle with Ruegsegger's permission, it is clear that Ruegsegger did not have the authority to grant her permission. Furthermore, plaintiff's arguments based on the family purpose doctrine appear misplaced because even if Ruegsegger allowed his daughter to use the vehicle, he was not the owner.

Finally, relying on *Stuart v. Capital Enterprise Insurance Company*, Ky.App., 743 S.W.2d 856 (1987), Locke has argued that the issue is not whether she had permission to drive, but rather whether she had a good faith belief that she was entitled to do so. In *Stuart*, a car owned by Mark Alan Boggs was taken without permission by Sharon Barker. Barker than proceeded to allow an unlicensed friend to drive. While the friend was driving, the car was involved in a one-car accident, injuring the passengers in the car. The injured passengers filed claims with Boggs's insurer, who sought a declaration that it was not liable for damages from the accident. The trial court adjudged that the passengers were not entitled to damages from the insurer.

On appeal, the issue presented was whether the insurer of a motor vehicle driven without the owner's permission is obligated to pay basic reparations benefits to the passengers who have no knowledge of the vehicle's conversion. The Court of Appeals determined that under the MVRA statute, only three classes of persons are excluded from receiving BRB: persons who have rejected the limitations on their tort rights, persons who intentionally cause injury to themselves or another person, and persons who convert a motor vehicle. The court further found that nothing in the statute ties a passenger's good faith belief that he is entitled to use the vehicle to that of the driver. Thus, the court found that the borrower's conversion did not

preclude the passengers, who had no knowledge of the conversion, from recovering BRB from the owners' insurer.

Based on *Stuart*, Locke argues that because she had a good faith belief that she was entitled to drive the vehicle, Mirac must provide coverage unless it can prove that she was a converter. However, assuming *arguendo that Stuart* is applicable to this case, the Supreme Court of Kentucky has made clear in *Preferred Risk*, decided after *Stuart*, that a vehicle owner has no duty to provide minimum tort liability insurance for an operator who does not have the owner's permission or who converts the vehicle to his own use. While Locke may not have been a converter because of her alleged good faith belief that she was entitled to use the vehicle, it is clear that she did not have the owner Mirac's permission to drive the vehicle.

Further review of this case therefore shows that Mirac only authorized Ruegsegger and Thurlow to drive the rental vehicle. Although Mirac gave permission for the vehicle to travel to Florida, and could foresee its use in Kentucky, it expressly forbid anyone other than the authorized drivers named in the rental agreement from operating the vehicle. Locke, despite her good faith beliefs, was not authorized to drive the vehicle, nor does it appear under the applicable law that she was an agent, servant, or a "second permittee." Instead, she was a person driving without the permission of the owner. Thus, based upon a review of Mirac's motion for relief and its reply briefs, as well as the Kentucky Supreme Court's decision in *Preferred Risk* and the other applicable law, the Court finds that there is no genuine issue of material fact regarding Mirac's obligation to provide coverage for Locke. Because Locke was not authorized to drive by the rental agreement, and was operating the vehicle without Mirac's permission, Mirac has no obligation to provide coverage in this case..

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

(1) the motion of defendant Mirac for relief from the opinion and order dated July 3, 1996, and for reconsideration of its motion

for summary judgment [DE #45] is **GRANTED;**

(2) the Court's order of July 3, 1996, denying the motion of defendant Mirac for summary judgment [DE #37] is **VACATED;**

(3) the motion of defendant Mirac for summary judgment [DE #31] is **GRANTED;** and

(4) summary judgment will be entered contemporaneously with this opinion and order in favor of defendant Mirac.

### SUMMARY JUDGMENT

In accordance with the opinion and order entered contemporaneously with this summary judgment, the Court hereby **ORDERS AND ADJUDGES:**

(1) summary judgment is entered in favor of the defendant Mirac, Inc., d/b/a Enterprise Rent-A-Car; and

(2) defendant Mirac is **DISMISSED** as a party to this action.